**KYSER v. NORRIS-WILLIAMS & CO., Inc.**

No. 23541.    Feb. 12, 1935.

Rehearing Denied March 5, 1935.

Charles P. Gotwals, John T. Gibson, Wm. A. Killey, and James D. Gibson, for plaintiff in error.

Bower Broaddus and Julian B. Fite, for defendant in error.

BUSBY, J. This is an appeal from a judgment of the district court of Muskogee county in favor of the defendant in error, as plaintiff, and against the defendant therein, J. H. Fryar, and the plaintiff in error, Hailey Kyser, as intervener therein.

The action was instituted by the plaintiff to secure the possession of certain chattels named in two chattel mortgages securing two promissory notes owned by the plaintiff and executed by the defendant Fryar.

The first of the notes was in the sum of $602.39, executed to the First National Bank of Fort Gibson. This note was secured by a chattel mortgage on certain chattels and was sold by the bank to the plaintiff. Thereafter Fryar executed a note to the plaintiff in the sum of $1,201, which was secured by a chattel mortgage on certain chattels. Thereafter Fryar executed a note in the sum of $476.50 to Hailey Kyser, secured by a chattel mortgage including practically all of the chattels included in the mortgage executed by Fryar to the First National Bank of Fort Gibson and sold to the plaintiff. Kyser intervened in the suit, setting up his note and mortgage and alleging that his lien and claim is superior to any right, claim, or lien of the plaintiff. To this intervening petition no answer or other pleading was filed. The defendant Fryar filed his answer to the plaintiff's petition, alleging full payment on both notes sued upon by the plaintiff.

The sole question at issue before the trial court was the right to the possession of the chattels in question, named in both the mortgage to the First National Bank of Fort Gibson and to the intervener, Kyser. In the testimony introduced by the plaintiff it was contended that the note given to the First National Bank of Fort Gibson was not paid. In the testimony introduced by the defendant, it was contended that the note had been paid from the proceeds of certain crops included in the mortgage and which the defendant was instructed to apply on that particular indebtedness. If the note was paid, the intervener had a right to the possession of the chattels involved, and if not paid, the plaintiff had the right to the possession of the chattels under the senior mortgage. This was a controverted question of fact which had been presented to a jury for determination. At the close of the testimony the plaintiff asked for a directed verdict in its favor for the amount claimed to be due on the note purchased from the First National Bank of Fort Gibson. The motion was sustained by the court and the directed verdict was presented to the jury and a verdict rendered accordingly.

The question of whether or not there was a balance due the plaintiff on the note given to the Fort Gibson bank was never adjudicated. This action on the part of the court is the real question presented here for the consideration of this court.

It appears from the record that the trial court reached the conclusion that there was a balance due the plaintiff on the note purchased from the First National Bank of Fort Gibson, from the conclusion previously reached and announced by the court during the trial that both notes and the securities thereon were equally bound for whatever balance was due on the indebtedness from the defendant to the plaintiff. It appears from the record that the court was influenced therein by the recital in the mortgage given to the Fort Gibson bank, which provided:

"It is expressly understood and agreed that any future transactions by which the first party may become indebted to the second party during the existence of this mortgage are to be based on the same as security, and the same shall be so held and construed."

This recital could only have reference to such additional indebtedness as might be contracted thereon between the maker of the mortgage and the bank to which it was given, and certainly could have no reference to, nor stand as security for, a note given

by the defendant directly to the plaintiff at a later date and which was not shown to have been even contemplated at the time. Neither was it shown that the plaintiff, in accepting its mortgage from the defendant which secured a much larger sum and covering property other than that included in the mortgage to the bank, intended to rely on any security which was then owned by the bank. In First National Bank of Ardmore v. Gillam et al., 134 Okla. 237, 273 P. 261, this court, through a commissioner's opinion, held:

"An agreement to secure one or more obligations must be confined to those intended to be secured by the parties to the contract, for nothing not within their contemplation will be included therein."

In Sowder v. Lawrence et al. (Kan.) 281 P. 921, that court held:

"A chattel mortgage given to secure a certain indebtedness definitely described in the mortgage cannot be extended to become a lien for other and different indebtedness, where subsequent purchasers or junior incumbrancers are interested."

See, also, Jones on Chattel Mortgages, sec. 91, and 11 C. J. 497.

In First National Bank of Sallisaw v. Ballard, 41 Okla. 553, 139 P. 293, this court held:

"In the absence of consent of mortgage debtor and his surety to make other application, to the extent of the mortgage indebtedness, the proceeds of mortgaged property should be applied as credit thereon."

The intervener having a mortgage on the same property included in the mortgage given to the First National Bank of Fort Gibson and then owned by the plaintiff, it became important to the intervener that the money paid by the defendant to the plaintiff, or any money realized by the plaintiff from the sale of the mortgaged property, be properly applied. Whether or not such funds had been received and properly applied was a controverted question of fact to be determined by the jury under the testimony introduced. It was reversible error for the court to give a directed verdict to the jury, taking away from them the real issue involved and leaving the same undetermined.

The judgment is reversed and the cause remanded, with instructions to proceed in accordance with the views herein expressed.

McNEILL, C. J., and BAYLESS, WELCH, and CORN, JJ., concur.